UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| A.H.,<br><br>        Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant. | Case No. 22-cv-02665-VKD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 14, 15 |

Plaintiff A.H.[1] appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, *et seq.* A.H. contends the administrative law judge ("ALJ") erred in four respects. First, he contends the ALJ improperly discounted the medical opinions of his treating physician, Dr. James Luu. Second, he contends the ALJ failed to provide sufficient reasons for discounting his subjective testimony. Third, he contends the ALJ failed to provide sufficient reasons for discounting the lay witness testimony of his friend. Fourth, he contends the ALJ erred in finding that he had the residual functional capacity ("RFC") to return to his prior relevant work.

The parties have filed cross-motions for summary judgment. Dkt. Nos. 14, 15. The matter was submitted without oral argument. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court denies A.H.'s

---

[1] Because opinions by the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil L.R. 5-1(c)(5)(B)(i).

motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.[2]

## I.   BACKGROUND

A.H. filed an application for disability insurance benefits on July 28, 2015, when he was 61 years old, alleging that he has been disabled since May 15, 2014 due to back problems, diabetes, high blood pressure, insomnia, high cholesterol, and elbow problems. AR 61, 139, 405.[3] A.H. has limited education. He did not attend high school, but finished grade school in Vietnam. AR 140, 429. Prior to the onset of his alleged disability in 2014, A.H. worked as a computer numerical control ("CNC") machine operator. AR 150-55, 430-31. English is not A.H.'s native language and he testified with the assistance of a Cantonese interpreter at the ALJ hearings. AR 31-32, 406.

A.H.'s application was denied initially and on reconsideration. AR 61, 62, 405. An ALJ held a hearing and subsequently issued an unfavorable decision on November 22, 2017, finding that A.H. was not disabled. AR 12-25, 29-46, 405. The Appeals Council denied A.H.'s request for review of the ALJ's decision. AR 1-3.

A.H. then filed a complaint seeking judicial review of the decision denying his application for benefits in the Northern District of California. The case was assigned to Senior District Judge Jeffery S. White. AR 449-50, 483. Judge White reversed the ALJ's decision and remanded the case for further administrative proceedings. AR 488-505; *Alan H. v. Saul*, No. 18-CV-06831-JSW, 2020 WL 4458918 (N.D. Cal. May 5, 2020). Judge White concluded that the ALJ did not err in rejecting Dr. Luu's opinion regarding A.H.'s physical impairments, but did err in failing to address Dr. Luu's separate opinion regarding A.H.'s mental impairments. AR 497-500. On remand, a different ALJ held a second hearing and subsequently issued another unfavorable decision on January 11, 2022. AR 405-418, 423. The ALJ found that A.H. met the insured status requirements of the Act through December 31, 2017 and that he had not engaged in substantial

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 4, 9.

[3] "AR" refers to the certified administrative record filed with the Court. Dkt. No. 11.

1    gainful activity since the alleged onset of disability on May 15, 2014. AR 408. She further found
2    that A.H. had the following severe impairments: "degenerative disc disease of the lumbar spine,
3    diabetes, hypertension, and hyperlipidemia." *Id.* She also found that A.H. had "depression," but
4    that it was a nonsevere impairment. *Id.* Finally, the ALJ found that A.H. did not have medically
5    determinable elbow problems or insomnia. AR. 409. Considering all medically determinable
6    impairments, the ALJ concluded that A.H. did not have an impairment or combination of
7    impairments that met or medically equaled the severity of one of the impairments listed in the
8    Commissioner's regulations. *Id.*

9    The ALJ determined that A.H. had the RFC to perform medium work, as defined in 20
10   C.F.R. 404.1567(c), with the following exertional limitations: "he could lift 50 pounds
11   occasionally, lift and carry 25 pounds frequently, stand and walk 6 out of 8 hours, sit 6 out of 8
12   hours; he could do frequent climbing of ramps and stairs, stooping, kneeling, crouching, and
13   crawling, and [he] could do no more than occasional work involving ladders, ropes, scaffolds or
14   balancing." AR 412. With this RFC, the ALJ further determined that A.H. was capable of
15   performing his past relevant work as a numerical control operator, DOT code 609-362.010, which
16   is classified as "medium, skilled, SVP 5," but was actually performed at the light exertional level
17   by A.H. AR 417. Accordingly, the ALJ concluded that A.H. was not disabled, as defined by the
18   Act, from the alleged onset date of May 15, 2014 through December 31, 2017. *Id.*

19   After the ALJ's decision became the final decision of the Commissioner, A.H. filed the
20   present action seeking judicial review of the decision denying his application for benefits. *See*
21   Dkt. No. 1.

22   **II.   LEGAL STANDARD**

23   Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's
24   decision to deny benefits. The Commissioner's decision will be disturbed only if it is not
25   supported by substantial evidence or if it is based upon the application of improper legal
26   standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021); *Morgan v. Comm'r of Soc. Sec.*
27   *Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In this context, the term "substantial evidence" means
28   "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a

1  reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115
2  (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104,
3  1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d
4  at 599.  When determining whether substantial evidence exists to support the Commissioner's
5  decision, the Court examines the administrative record as a whole, considering adverse as well as
6  supporting evidence.  *Ahearn*, 988 F.3d at 1115; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.
7  1989).  Where evidence exists to support more than one rational interpretation, the Court must
8  defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16; *Morgan*, 169 F.3d at
9  599.

## III.   DISCUSSION

A.H. argues that the ALJ erred by giving insufficient weight to the opinions of A.H.'s treating physician, Dr. James Luu, and by discounting A.H.'s own subjective testimony and the lay witness testimony of his friend.  In addition, A.H. argues that the ALJ erred in finding that he had the RFC to return to his past work as a CNC machine operator.

### A.   Medical Evidence

A.H. faults the ALJ for giving little weight to the opinion of Dr. James Luu, his treating physician.  Dkt. No. 14-1 at 9-12.  In a September 8, 2015 letter, Dr. Luu opined that A.H. suffered from chronic back pain, uncontrolled diabetes, coronary artery disease, and severe major depression.  AR 250-51.  Dr. Luu opined that A.H.'s physical and mental impairments imposed significant limitations on his ability to work.  *See* AR 251.  A.H. contends that the ALJ was required to credit Dr. Luu's opinions unless she gave "clear and convincing reasons" to support a rejection of those opinions.  Dkt. No. 14-1 at 10.  The Commissioner responds that "Dr. Luu's medical opinion was contradicted by multiple others in the record" and the ALJ gave sound reasons for giving greater weight to the opinions of other physicians.  Dkt. No. 15 at 3-11.

Under the regulations that apply to A.H.'s application for benefits,[4] medical opinions are

---

[4] The Commissioner's regulations regarding the evaluation of medical evidence were revised effective March 27, 2017.  The new regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c ("For claims filed . . . on or after March 27, 2017, the rules in this section apply.  For claims filed before March 27, 2017, the rules in § 404.1527 apply.").  Because

4

afforded different weight based on a "three-tiered hierarchy." *See* 20 C.F.R. § 404.1527(a)(2); *see also Woods v. Kijakazi*, 789-90 (9th Cir. 2022) (describing weighted analysis under "three-tiered hierarchy" that applies to pre-March 27, 2017 applications). A treating physician's opinion is entitled to "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion is uncontradicted by other evidence, an ALJ must provide "clear and convincing reasons" for not fully crediting the opinion. *Woods*, 32 F.4th at 789. However, if a treating physician's opinion is contradicted by other evidence, an ALJ need only provide "specific and legitimate reasons" for not fully crediting the opinion. *Id.* The ALJ's reasons must be supported by substantial evidence. *Id.* "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Identifying "specific conflicts between [a physician's] opinion and the clinical evidence," such as "contemporaneous medical records," is a legitimate basis for an ALJ to discount that opinion. *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022). In evaluating any medical opinion, the ALJ must consider the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the opinion's supportability and consistency, and the physician's specialization, if any. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

### 1. Physical Impairments

Dr. Luu opined that A.H.'s physical impairments included chronic lower back pain, migraine headache, uncontrolled diabetes, hypertension, and dyslipidemia. AR 250. He stated that these impairments would prevent A.H.'s from standing or sitting for more than 2 hours per 8-hour workday, prevent him from lifting or carrying objects over 10 pounds both occasionally and frequently, and stop him from climbing, balancing, stooping, kneeling, crouching, or crawling at all. AR 251. In addition, Dr. Luu stated that A.H. had "[m]anipulative limitation occasionally

---

A.H.'s application was filed before March 27, 2017, the Court applies the rules then in effect under 20 C.F.R. § 404.1527.

reaching, handling, fingering, and feeling due to his stroke." *Id.*

The ALJ gave Dr. Luu's opinion "less weight" than those of reviewing physicians Drs. G. Lee and A. Volterra, who reviewed A.H.'s application and the medical evidence of record and concluded that he could "could lift or carry 50 pounds occasionally and 25 pounds frequently," "could stand [or sit] about 6 out of 8 hours," and "could frequently balance, stoop, kneel, crouch, and crawl." AR 415-16. The ALJ also gave Dr. Luu's opinion "less weight" than examining physician Dr. Tomas Rios, who examined A.H. in November of 2015 in connection with his application for benefits and concluded that he "could lift and carry 50 pounds occasionally and 25 pounds frequently" and faced "no limitations with regard to standing, walking, and sitting." *Id.* The ALJ gave "significant weight" to the opinions of Drs. Lee, Volterra, and Rios. *Id.*

Because Dr. Luu's opinion was not uncontradicted, the ALJ was required to give specific and legitimate reasons for discounting it. *Woods*, 32 F.4th at 789. The Court agrees with the Commissioner that the ALJ's determination is supported by substantial evidence. While Dr. Luu "had far more contact" with A.H. than any of the other medical providers, the ALJ acknowledged the nature of the treating relationship when weighing Dr. Luu's opinion. Dkt. No. 17 at 3; AR 416 ("the undersigned considered Dr. Luu's treating relationship, but his opinion of what amounts to a less than sedentary capacity is not supported"). She also acknowledged that A.H. had several severe and documented medical conditions, including degenerative disc disease of the lumbar spine, diabetes, hypertension, and hyperlipidemia. AR 408. However, she determined that Dr. Luu's opinion was less reliable than those of the other doctors, in spite of his treating relationship, because it was "not supported by review of [Dr. Luu's] treatment notes" which "offer[ed] few to no significant objective clinical findings that would support the degree of limitations assessed." AR 416. *See also* AR 414 ("the claimant's medical records do not show serious abnormalities"). The ALJ also noted that Dr. Luu's opinion was "inconsistent with the substantially normal physical examination findings, the conservative course of care, and the claimant's intact activities of daily living." AR 416. These are "specific and legitimate inconsistencies supported by substantial evidence." *Smartt*, 53 F.4th at 496.

By contrast, the ALJ concluded that the opinions of Drs. Lee, and Volterra, the reviewing

-
-

-

physicians, were "well explained, strongly supported by objective medical findings, and consistent with other medical and nonmedical evidence in the record." AR 415. She also found Dr. Rios's "well explained" opinion was "substantially supported by the objective medical findings in his examination," which showed "substantially normal musculoskeletal, neurologic, cardiovascular, and other body system findings[,] but for some limitations in lumbar range of motion and tenderness in the lumbar spine." AR 416.

Accordingly, the Court concludes that substantial evidence supports the ALJ's decision to give Dr. Luu's opinion "less weight," as compared to the "significant weight" she gave the opinions of Drs. Rios, Lee, and Volterra.[5]

### 2. Mental Impairments

Dr. Luu opined that A.H. suffered from "severe major depression" which "started from his chronic back pain." AR 251. He stated that A.H. "cannot concentrate well enough to read [and] cannot even make even minor decisions," "has interest in only one or two of [his] formerly pursued activities" and "has to make a big effort to start or finish[] his usual activities of daily living." *Id.* Dr. Luu opined that A.H.'s depression "seriously limited" his ability to "relate to co-workers, deal with [the] public, interact with [s]upervisors, maintain attention/concentration, understand[,] remember and carry out simple job instructions." *Id.* He also opined that A.H. had "no useful ability" to "follow work rules, use [] judgment, deal with work stress, function independently, understand and remember[,] carry out complex job instructions, carry out detailed, but not complex job instructions, behave in an emotionally stable manner, relate predictably in social situations[,] and demonstrate reliability." *Id.*

The ALJ gave Dr. Luu's opinion regarding A.H.'s mental functioning "less weight[,] due to a lack of supportability and consistency with the objective medical findings and other evidence." AR 411. She gave "significant weight" to the opinions of Sally Rowley, Psy.D., and Robert Liss, Ph.D., psychologists who reviewed A.H.'s application for benefits, and "some but not

---

[5] Judge White reached a similar conclusion when reviewing the ALJ's assessment of Dr. Luu's opinion in A.H.'s prior case. *See Alan H.*, 2020 WL 4458918, at *6-7.

7

significant weight" to the opinion of Dr. Antoinette Acenas, a psychiatrist who examined A.H. in connection with his application. AR 410-11. Drs. Rowley and Liss acknowledged A.H.'s diagnosis of depression, but determined that he had "no severe medically determinable mental impairment," as evidenced by his "grossly intact mental status examination with mildly depressed affect and intact cognitive ability" and "intact activities of daily living including socializing with family and getting along with others." AR 410. Dr. Acenas examined A.H. in November of 2015 and concluded that he "was not impaired in his abilities to perform basic mental work-related activities" at all. AR 263, 411. The ALJ found Dr. Acenas' opinion to be "generally consistent with other medical and nonmedical evidence," but noted that "the lack of any limitation in mental functioning is afforded little weight given the findings of depression[,] which itself implies some limitations albeit mild." AR 411. On the basis of these opinions, the ALJ concluded that A.H.'s depression was "nonsevere" and did not meet the criteria of a listed mental impairment. AR 408-09.

Because Dr. Luu's opinion was not uncontradicted, the ALJ was required to give specific and legitimate reasons for discounting it. *Woods*, 32 F.4th at 789. The Court agrees with the Commissioner that the ALJ's determination is supported by substantial evidence. The ALJ considered Dr. Luu's treating relationship with A.H.. AR 411. However, she also found that Dr. Luu's opinion was "not supported by his own treatment notes that reveal no significant mental status findings" and that "[a]bsent [his September 8, 2015] letter, the onset of the claimant's depression is not reflected in the treatment notes." AR 411-12. The ALJ noted that A.H. had "intact activities of daily living," his clinical record showed "no specialized mental health treatment," and the "duration of symptoms described in [Dr. Luu's] opinion are not reflected in the medical records with complaints, therapy, counseling, medications, or even general observations during treatment." AR 412. All of these observations reflect "specific conflicts between [Dr. Luu's] opinion and the clinical evidence." *See Smartt*, 53 F.4th at 495.

By contrast, the ALJ found that the opinions of Drs. Rowley and Liss were "strongly supported by objective medical findings, and consistent with other medical and nonmedical evidence." AR 411. She also found that Dr. Acenas's opinion was "supported by the objective

8

medical findings" and "generally consistent with other medical and nonmedical evidence," although she did not fully credit Dr. Acenas's opinion that A.H. had no mental functioning limitations whatsoever. *Id.*

Accordingly, the Court concludes that substantial evidence supports the ALJ's decision to f Dr. Luu's opinion "less weight," as compared to the "significant weight" she gave the opinions of Drs. Rowley and Liss and the "some weight" she gave to Dr. Acenas's opinion.

**B.     A.H.'s Subjective Testimony**

A.H. argues that the ALJ erred in discounting his testimony about the severity of the symptoms and limitations he described in his hearing testimony. Dkt. No. 14-1 at 13-16. The Commissioner responds that the ALJ considered A.H.'s claimed limitations and properly discounted them on the basis of medical evidence and A.H.'s treatment records. Dkt. No. 15 at 11-16.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (cleaned up). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* That is, the ALJ must make an assessment "with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Id.* Inconsistency with objective medical evidence, conservative treatment, and the claimant's ability to routinely perform routine activities of daily living can be acceptable reasons for an ALJ to discount a claimant's subjective pain testimony. *Smartt*, 53 F.4th at 496-97.

Here, A.H. testified at the 2021 hearing that he was laid off from his job as a CNC machine operator in 2013 because standing for 6-7 hours a day at his job caused him serious back pain, which led him to physically and emotionally "slow down." AR 433. After he was laid off, A.H.

found another job of the same kind, but was laid off from that job after two weeks because his back pain was "unbearable," his memory "started getting worse," and he "made lots of mistakes." AR 434.

In her decision, the ALJ determined that A.H.'s "medically determinable impairments could reasonably be expected to cause" the symptoms he described, but that A.H.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 413. A.H. argues that the ALJ failed to specify which portions of his testimony she found not credible and which medical records contradicted specific statements he made. Dkt. No. 14-1 at 13-14. He also argues that the ALJ improperly singled out "a few periods of temporary well-being from a sustained period of impairment" by not considering whether he could "sustain activity at least at the medium exertional level for a full work day and work week." *Id.* at 15 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014). According to A.H., none of the chores or other activities the ALJ cited showed that he could sustain activity for more than a few hours. *Id.*

The Court disagrees. The ALJ gave specific and permissible reasons for discounting A.H.'s testimony. She determined that the objective medical evidence in the record did not "fully support the intensity, persistence, and limiting effects alleged during the period under consideration," noting that "the claimant's medical records do not show serious abnormalities." AR 413-14. With respect to A.H.'s back pain, she pointed out that x-rays from May of 2014 showed "mild L5-S1 degenerative disc disease, but no evidence for compression fracture or spondylolisthesis" and Dr. Rios' exam found "some limitations of lumbar flexion/extension movement with some tenderness along the lumbar spine," but also "substantially normal body system findings." *Id.*; *see also* AR 414 (noting that A.H.'s physical exams showed "grip strength, intact sensation, good sensation on bilateral feet, normal monofilament exam, no ulceration, regular heart rate and rhythm, normal S1 and S2, no extra sounds or murmurs heard, no edema, 2+ and equal bilaterally peripheral pulses, normal musculoskeletal range of motion, negative straight leg raising, and normal 2+ deep tendon reflexes in all four extremities, and intact vision in both eyes"). The ALJ also noted that A.H.'s treatment had been conservative and "[did] not support

10

disabling limitations through the date last insured." *Id.*. In particular, she observed that A.H. was not referred for physical therapy for his back pain and instead was treated with over the counter medication, such as ibuprofen and Tylenol, on an as needed basis. AR 413-14. The ALJ also considered that "A.H.'s "activities of daily living were largely intact despite his impairments," noting that he could "perform his own personal hygiene, grooming, and activities of daily living independently," "help with some limited household chores such as cleaning and ironing," and had the capacity to "drive a car, go out alone, shop in stores, manage his finances, and go to the local library and church on a regular basis." AR 414-15. She did qualify these last observations by noting that "[w]hile such activities are not determinative of the ability to work, such abilities do provide insight into the claimant's functioning during the period at issue." AR 415.

A.H. faults the ALJ for not being sufficiently specific about which of his testimony she rejected and on what basis. However, an ALJ must only be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). A conclusory statement that the claimant was incredible which does not identify specific inconsistences is not sufficient. *Id.* However, that is not what the ALJ did here. She summarized A.H.'s hearing testimony regarding "the effects of his back pain." AR 413. Then she cited evidence in the record and explained how that evidence was inconsistent with A.H.'s testimony about the severity of his symptoms and limitations. *See* AR 413-15.

A.H.'s argument that the ALJ improperly considered his daily activities also fails. While "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," *Garrison*, 759 F.3d at 1016, the ALJ did not unduly rely on A.H.'s ability to engage in routine daily activities. Indeed, she explicitly disclaimed that A.H.'s daily activities were "determinative of [his] ability to work" and merely stated that they "provide[d] insight" into his functioning. AR 415.

1     Accordingly, the Court concludes that the ALJ provided specific, clear, and convincing
2 reasons to discount A.H.'s subjective testimony about the severity of his symptoms and
3 limitations.

**C.     Lay Witness Testimony**

A.H. argues that the ALJ erred in discounting lay witness testimony of A.H.'s friend, K. Truong, about the severity of A.H.'s symptoms and limitations. Dkt. No. 14-1 at 16-17. The Commissioner responds that the ALJ considered the lay witness testimony and properly discounted it. Dkt. No. 15 at 16-18.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "Indeed, lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment." *Id.* (cleaned up). "Consequently, if the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Id.* (cleaned up).

On October 25, 2015, K. Truong completed a "function report" for A.H.'s benefits application, where he reported that A.H. had trouble doing physical work because of his back pain, could only lift objects less than 10 pounds, and could only walk for a short distance. AR 180-87. K. Truong also stated that A.H. was able to drive a car, went shopping with his wife twice a week, and went to the local library and church on a regular basis. AR 183-84. The ALJ "accepted [K. Truong's statements] as sincere observations of the claimant's activities of daily living at the time of writing," but concluded that they "[did] not warrant more limitations that previously stated in the residual functional capacity given the context of the objective medical findings and other evidence of record." AR 417. Additionally, the Commissioner points out that some of K. Truong's statements are written in first person, as if from A.H.'s perspective, suggesting perhaps that K. Truong was simply parroting A.H.'s own statements. Dkt. No. 15 at 17; AR 180-81. However, the ALJ did not discount K. Truong's testimony on this basis and the Court does not rely on it here. *See* AR 417.

A.H. argues that the ALJ failed to give specific and legitimate reasons for discounting K.

12

Truong's statements. Dkt. No. 14-1 at 16-18. The Commissioner contends that the ALJ properly discounted K. Truong's testimony because, like A.H.'s own subjective testimony, the witness statements were not entirely consistent with the objective medical evidence. Dkt. No. 15 at 16-18.

Inconsistency with medical evidence is a germane reason for an ALJ to discount a lay witness's testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). As discussed above, the ALJ cited objective medical evidence and other evidence in the record in assessing A.H.'s own testimony. Her conclusion with respect to K. Truong's statements—which were similar to A.H.'s own testimony—is based on the same "objective medical findings and other evidence of record." AR 417. *See Bayliss*, 427 F.3d at 1218 (proper for ALJ to accept lay witness testimony "consistent with the record of [claimant's] activities and the objective evidence in the record" and reject portions that are not); *cf. Molina*, 674 F.3d at 1117 (no prejudicial error when ALJ rejects "lay witness testimony [that] does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony.").

Accordingly, the Court concludes that the ALJ's decision to discount K. Truong's lay witness testimony was supported by substantial evidence germane to the witness.

### D. The ALJ's RFC Assessment

A.H. argues that the ALJ erred by finding that he could return to his work as a CNC machine operator because it required him to stand 8 hours per day, while the ALJ found that he only had the RFC to stand 6 hours per day. Dkt. No. 14-1 at 18. The Commissioner responds that the ALJ properly relied on the testimony of the vocational expert ("VE") to find that A.H. could return to his prior work. Dkt. No. 15 at 18-19.[6]

---

[6] A.H. also faults the ALJ for failing to include any mental limitations in her RFC finding, despite noting that his depression caused some limitations. Dkt. No. 14-1 at 11. This argument is not persuasive. The ALJ rated A.H.'s functioning in each of the four broad areas known as the "paragraph B criteria" and found his limitations were mild or none in each. AR 409-10; 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00.A.2.b. Her conclusion that the mental limitations from A.H.'s depression were mild was "expressly reflected" in her RFC finding. *See Woods*, 32 F.4th at 794; *Hoopai v. Astrue*, 499 F.3d 1071, 1078 (9th Cir. 2007) ("The ALJ was not required to make any more specific findings of the claimant's functional limitations [than the paragraph B criteria.]").

13

At step four of the sequential analysis, the ALJ determines whether a claimant has the RFC to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If a claimant can return to his prior work, he is not disabled. *Id.* This standard is met if the claimant can return to his prior work "either as actually performed or as generally performed in the national economy." *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016); 20 C.F.R. § 404.1560(b)(2). An ALJ may rely on the testimony of a VE in assessing a claimant's RFC. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

Here, the ALJ found that A.H. had the RFC "to perform medium work as defined in 20 CFR 404.1567(c) except he could lift 50 pounds occasionally, lift and carry 25 pounds frequently, stand and walk 6 out of 8 hours, sit 6 out of 8 hours." AR 412. Based on the vocational expert's testimony at the hearing and A.H.'s own description of his work, she determined that A.H. could return to his work as a CNC machine operator "as actually and generally performed." AR 417.

A.H. claims that the ALJ erred in concluding that he could return to his work as a CNC machine operator because it would require him to stand for more than 6 hours per day. Dkt. No. 14-1 at 18-19. He claims the VE testified that "most 'medium work' occupations require more than 6 hours of standing and walking in an 8-hour day" and that this was consistent with A.H.'s own work experience. *Id.* at 18. The Commissioner responds that A.H. mischaracterizes the vocational expert's testimony and, if properly understood, the testimony supports the ALJ's decision. Dkt. No. 15 at 18-20.

After reviewing the hearing transcript, the Court agrees with the Commissioner. The portions of the VE's testimony on which A.H. relies do not contain statements suggesting that medium work occupations require more than 6 hours of standing or walking. *See* AR 437-441. While some of the cited testimony is not entirely clear, the VE did testify that it was possible that workers in some medium work occupations would stand for more than 6 hours. AR 440. However, she did not testify that if A.H. could only stand for 6 of 8 hours, he would be unable to perform medium work. AR 436-437. Additionally, "the Social Security Administration has long interpreted [the term medium work] to include [a 6-hour standing and walking] restriction." *Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021) (citing SSR 83-10, 1983 WL 31251, at *6 (Jan. 1,

14

1983)). *See also id.* ("There is no reason to think that the vocational expert was not familiar with Social Security Ruling 83-10 and the agency's longstanding interpretation of 'medium work.'"). Given this context, A.H.'s argument that a 6-hour limitation on standing or walking is necessarily inconsistent with medium work is not persuasive.

A.H.'s testimony about how he performed his past work does not change the result at this step, as he is not disabled if he can perform that work as it is "generally performed in the national economy," notwithstanding his prior experience. *Stacy*, 825 F.3d at 569.

Accordingly, the Court concludes that the ALJ's step four determination is supported by substantial evidence.

## IV. CONCLUSION

Based on the foregoing, A.H.'s motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment is granted. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: September 12, 2023

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge